928 So.2d 984 (2006)
Gary G. SIMS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-02106-COA.
Court of Appeals of Mississippi.
May 9, 2006.
*985 Daniel Kyle Robertson, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. During the fall of 2003, Shannon Nash told her husband, Billy Nash, that she and Gary Sims had been having an affair. While reconciling with her husband, Shannon attempted to end the affair. Although Billy Nash had never met Sims, he was familiar with Sims's white Dodge Dakota pickup truck because after the affair ended, Shannon would occasionally spot the vehicle in traffic and point it out to Nash.
¶ 2. On the night of December 23, Sims waited in his truck outside the Lone Star Steakhouse in Hattiesburg where Nash worked as a manager. As Nash drove home, Sims followed him in his Dodge truck. Sims pulled his truck beside Nash's vehicle and shot Nash in the face with a Winchester 12 gauge shotgun and drove away.
¶ 3. Dazed, Nash testified that he stopped his vehicle, looked in the mirror and began to pray. Realizing that he was only a few miles from his house, Nash drove himself home, where Sims sat parked on the driveway, fumbling inside his truck. As Nash stumbled from his vehicle, Sims shot at him again, striking the driver's side door near Nash's head. Screaming for his wife, Nash ran inside, while Sims fled in his truck. Sims soon abandoned the truck and fled on foot until he surrendered to deputies of the Jones County Sheriff's Department. Inside his truck investigators discovered the shotgun, another gun, and a shotgun shell. Sims made a videotaped confession at the sheriff's department.
*986 ¶ 4. As a result of the shooting, Nash sustained serious, permanent, disfiguring injuries to his face and has, to date, endured eight of a series of twelve operations.
¶ 5. Sims was convicted of a drive-by shooting and aggravated assault. For the drive-by shooting he was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections with five years suspended. Sims also received a sentence of twenty years with ten years suspended for the aggravated assault charge, with the sentence running consecutively to the sentence he received for the drive-by shooting.
¶ 6. It is from this conviction that Sims appeals, arguing five assignments of error which we have framed as follows: (1) whether the trial court erred in denying his motion for a continuance; (2) whether the sentence imposed is unconstitutional and excessive; (3) whether the trial court erred in admitting two gruesome photographs into evidence; (4) whether the trial court erred in failing to conduct a Rule 403 balancing test; and (5) whether it was error to allow the State to comment on Sims's failure to testify and Sims's lack of remorse during closing arguments.
¶ 7. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 8. "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." Montgomery v. State, 891 So.2d 179, 182(¶ 6) (Miss.2004).

I. DID THE TRIAL COURT ERR IN DENYING SIMS'S MOTION FOR A CONTINUANCE?
¶ 9. During trial, Deputy Jason Stricklin of the Jones County Sheriff's Department was called to testify. The State asked Stricklin if Sims made any spontaneous statements to him, and Kyle Robertson, one of Sims's attorneys, objected, arguing that the defense had not been provided with "anything" from Deputy Stricklin. The State then moved on to another question without a response from Stricklin.
¶ 10. When Robertson began to cross-examine Stricklin, he observed that Stricklin was holding a report and commented on the record that the defense had not been provided with the report. Robertson requested some time to review the document, and the court dismissed the jury for lunch. The State noted that it, too, had not received any report from Stricklin.
¶ 11. After lunch, Sims requested a continuance due to the untimely disclosure of the report. The court inquired as to what information in the report necessitated a continuance, and Robertson replied as follows:
I'm telling you, Your Honor. They're talking about the second shot, evidence of the second shot from where the bullet made a mark inside of the front door of the driver's side window of the victim's vehicle. This is the first time that's been given to us as testimony that's going to be provided. Up until this day I didn't have anything in the discovery that informed the defense that there was any evidence of where the second shot landed. And at this time, you know, we move for a continuance on that fact.
¶ 12. The State argued that it had already provided the defense with pictures of the bullet hole, indicating where the second shot struck the vehicle, but reiterated that it was unaware of the content of the report Stricklin held. The court ruled that the defense had not presented anything contained in the report which would prejudice Sims and denied the continuance.
*987 ¶ 13. In support of his argument that the court improperly denied the continuance, Sims points to an exchange which occurred later in the trial during Investigator Matt Ishee's testimony. Ishee testified that he went to the Nash home after receiving a dispatch from the sheriff's office. Robertson objected as follows:
Your Honor, I hate to keep jumping up and down, but I'm going to object to any of this testimony. There is no report from Matt Ishee. The only report  the only thing that I have from Matt Ishee is his involvement in a videotape. There is no report as to any investigation he might have performed up until the time the videotape was made. That's the only involvement I know, as the defendant's counselor, of Matt Ishee's involvement in this case.
¶ 14. The State then ascertained that Ishee created the report and requested an opportunity to review the report, stating that it had furnished the defense with copies of all the reports in the State's possession. The court then dismissed the jury. After reviewing the report, the State again noted that it had not received the report from the sheriff's office, but in the interest of time it would only question Ishee about his involvement in Sims's confession.
¶ 15. Robertson again objected, reiterating that the State had failed to disclose the report. The court ruled that Ishee's testimony would be limited to his involvement in Sims's confession.
¶ 16. The procedure for addressing an alleged discovery violation was enunciated in Box v. State, 437 So.2d 19 (Miss.1983) (Robertson, J., specially concurring), and codified in URCCC 9.04 I., which provides as follows:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or a mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
¶ 17. For a discovery violation to constitute grounds for reversal, the following must be shown:
(a) that the State possessed evidence favorable to the defendant which the defendant did not have "nor could he obtain it himself with any reasonable diligence," (b) that the State somehow suppressed the information, and (c) that, had it been disclosed, a different outcome to the case was at least a reasonable possibility.
McNair v. State, 814 So.2d 153, 157(¶ 13) (Miss.Ct.App.2001) (quoting King v. State, 656 So.2d 1168, 1174 (Miss.1995)).
¶ 18. We first note that we are unpersuaded by the State's argument at trial that it had not received the report. It is well-settled law that for purposes of discovery violations "the State" is not limited to the district attorney's office in the jurisdiction in which the crime is prosecuted. *988 Indeed, "the State" extends to all law enforcement officials, including the district attorney's office and "all other cooperating law enforcement officials  municipal, county, state or federal, the prosecution witnesses, and any other persons cooperating in the investigation and prosecution of the case." King, 656 So.2d at 1174.
¶ 19. We address Investigator Ishee's testimony first, finding that defense counsel failed to request a continuance. The failure to request a continuance constitutes a waiver of the discovery violation. Comby v. State, 901 So.2d 1282, 1287(¶ 12) (Miss.Ct.App.2004). Furthermore, the State agreed to limit the scope of its questions and only ask Ishee about his involvement in Sims's confession. As the State declined to introduce either the report or evidence that Ishee was involved in the investigation, under URCCC 9.04 I(3), the trial court was under no obligation to grant a continuance had the defense properly requested one.
¶ 20. Regarding Stricklin's testimony, the defense did request a continuance; however, the State did not attempt to admit the reports or the information contained therein. Sims has not shown reversible error in the State's failure to tender the report; furthermore, because the State withdrew its efforts to introduce the information it failed to produce during discovery, we find no error in denying the motion for a continuance.

II. IS SIMS'S SENTENCE UNCONSTITUTIONAL AND EXCESSIVE?
¶ 21. Sims argues that the sentence imposed by the trial court is unconstitutionally disproportionate and excessive because Sims has no prior criminal history. We note that Sims failed to attack the constitutionality of his sentence at his sentencing hearing and in his motion for a new trial. As Sims did not present this issue to the trial court, it is procedurally barred from our consideration. Reed v. State, 536 So.2d 1336, 1339 (Miss.1988).
¶ 22. Notwithstanding the procedural bar, we review this issue as a clarification of the burden the defendant bears in asserting that his sentence is unconstitutional. Sims concedes that "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops v. State, 681 So.2d 521, 537 (Miss.1996). Sims argues that if a threshold comparison between the crime committed and the sentence imposed leads to an inference of "gross disproportionality," this Court may review the sentence pursuant to the analysis of Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Our supreme court acknowledged that Solem's three-step analysis applies "only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Hoops, 681 So.2d at 538 (citing Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir.1996)). If the defendant makes such a showing, this court will consider the following factors in determining whether the sentence is disproportionate to the crime committed: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. Fleming v. State, 604 So.2d 280, 302-03 (Miss.1992) (citing Solem, 463 U.S. at 292, 103 S.Ct. 3001).
¶ 23. Sims points to sentences received by defendants who have also been convicted of a drive-by shooting and compares Mississippi law to the laws of Alabama, Georgia and Louisiana; however, Sims has *989 failed to make an initial showing that his sentence is grossly disproportionate to the crime he committed. In the absence of such a showing, we do not review the sentence under the Solem analysis. Williams v. State, 784 So.2d 230, 236(¶ 15) (Miss.Ct.App.2000).
¶ 24. Additionally, we disagree that sentences of thirty years and twenty years are disproportionate to Sims's crimes. Sims fired a 12 gauge shotgun at Nash while both men were driving, jeopardizing himself, Nash, and any other persons on the road that night. Sims then ambushed Nash at home, where he attempted to shoot Nash again. Regarding the aggravated assault, it will suffice to say that Nash suffered a grievous injury to his face. As the trial court commented during sentencing, "I don't think in all my years as a lawyer and as a judge that I've seen anything more dastardly and more threatening of somebody's life than what was committed in this case." Aside from being procedurally barred, this issue is wholly without merit.

III. DID THE TRIAL COURT ERR IN ADMITTING TWO PHOTOGRAPHS OF NASH'S INJURIES?
¶ 25. Sims argues that the court erred in admitting a photograph taken of Nash's wound while he was being treated at the hospital; Sims also argues that the court erred in admitting a picture of the interior of Nash's truck which depicted blood, shattered glass and Nash's severed mouth and moustache. Sims argues that Nash's injury was visible to the jury during his testimony and the pictures were unnecessarily gruesome. The State counters that the court acted within its discretion in admitting both of the photographs.
¶ 26. "[T]he admission or exclusion of evidence, photographs in particular, is within the sound discretion of the trial court and that decision will be upheld unless there is an abuse of discretion." Shabazz v. State, 729 So.2d 813, 823(¶ 28) (Miss.Ct.App.1998). Given such a deferential standard of review, we agree with the State's contention that the court properly admitted the evidence. The pictures presented an accurate representation of Sims's injury, as well as the location of the assault and injury, and supplemented the testimonies of Nash, Deputy Stricklin and Dr. Robert Coleman, who treated Nash at the emergency room. The admission of photographs for these purposes is permissible. See Brown v. State, 690 So.2d 276, 289 (Miss.1996).
¶ 27. Sims further argues that such supplementation was unnecessary, as the jury was able to see the effect of Nash's injury while he testified. Because the record does not contain a relevant depiction of Nash after the assault other than the pictures contested on appeal, we are unable to review this argument. We find no abuse of discretion in admitting the photographs.

IV. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF ANOTHER GUN?
¶ 28. Deputy Stricklin testified that after he surrendered Sims to Deputies Ishee and Johnson he "found out that or learned that there was another firearm that seemed to have on [sic] his possession." Defense counsel objected and requested a mistrial.[1] The court instructed *990 Stricklin not to talk about any other weapon and denied the motion.
¶ 29. Sims argues that the State improperly used this evidence to show that Sims had a propensity for violence. Sims argues that the court failed to conduct a balancing test pursuant to Mississippi Rules of Evidence Rule 403 and failed to issue a limiting instruction, and such errors merit reversal.
¶ 30. Mississippi Rule of Evidence 404(b) addresses evidence of other crimes, wrongs or acts as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 31. Rule 404(b) does not operate in isolation. Regarding its application our supreme court has held that, "[w]here proof of other crime or acts . . . is offered into evidence pursuant to Rule 404(b), it is still subjected to the requirement that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Flowers v. State, 773 So.2d 309, 318(¶ 25) (Miss.2000). Furthermore, Rule 403 is an "ultimate filter through which all otherwise admissible evidence must pass." Jenkins v. State, 507 So.2d 89, 93 (Miss.1987).
¶ 32. Sims does not direct this Court to any precedent indicating that the contemporaneous possession of an extra gun during a shooting constitutes a prior bad act within the ambit of M.R.E. 404(b). Furthermore, our supreme court has previously held that such evidence is generally admissible.
[A]rticles . . . found near the place or scene of crime or near the place where the defendant was arrested, have been admitted in evidence. (citation omitted). This is true even where it is not claimed nor proved that they were used in the commission of the alleged crime in cases where the evidence has probative weight, or where they constitute a part of the surrounding scene or picture. . . .
Wilkins v. State, 264 So.2d 411, 413 (Miss. 1972). As the presence of the gun is probative of Sims's plan and preparation, and as the court instructed Stricklin not to testify about other weapons at the crime scene, we find no error.
¶ 33. Assuming for the sake of argument that testimony regarding the presence of the additional gun could be construed as prohibited by Rule 404(b), the failure to conduct a Rule 403 balancing test and issue a limiting instruction has previously been held as harmless error. See McKee v. State, 791 So.2d 804, 810(¶ 23) (Miss.2001); Sheppard v. State, 910 So.2d 1182, 1187(¶ 14) (Miss.Ct.App. 2005); Brink v. State, 888 So.2d 437, 451(¶ 42) (Miss.Ct.App.2004). "An error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." McKee, 791 So.2d at 810(¶ 24) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 120 (Miss.1999)). "Where the prejudice from an erroneous admission of evidence dims in comparison to other overwhelming evidence, this Court has refused to reverse." Carter v. State, 722 So.2d 1258, 1262(¶ 14) (Miss.1998).
¶ 34. Any error suffered was harmless, as the evidence of Sims's guilt was overwhelming. Nash's eyewitness testimony, the physical evidence from Sims's truck and Nash's vehicle, and Sims's videotaped confession constitute overwhelming evidence *991 of his guilt. This issue is without merit.

V. DID THE COURT ERR IN ITS RULING REGARDING COMMENTS BY THE STATE DURING CLOSING ARGUMENTS?
¶ 35. Sims argues that the court erred in overruling his objection to the following comment made by James R. Parrish on behalf of the State during closing arguments:
You know, I saw that guy sit there on that tape and go on about, you know, I was  what was the words he used? I was  oh, what was it? He said  I believe he said he was embarrassed or ashamed or he felt guilty. That's what it was. He felt guilty about going to NA, Narcotics Anonymous, after he had been smoking cocaine all day. He felt guilty about something about the guy's wife. But, you know, the only thing I never heard him say on the tape? He never one time said he felt guilty about shooting that guy in the face after he got off work Christmas Eve to go home to be with his wife and little three year old child. I never heard him to this time say he felt guilty about that. And you haven't either because I don't know whether he does or not. But he still hadn't taken responsibility for  that.
Mr. Robertson: Objection, Your Honor.
Mr. Parrish:  that. I don't know what he feels.
The Court: Just a minute, Mr. Parrish. What's your objection?
(Mr. Robertson approached the bench)
The Court: Overruled.
¶ 36. The record does not indicate on what grounds Robertson objected. We have previously held that it is the appellant's duty to present an adequate record on appeal, that we may adequately and properly review the objection and the court's ruling. See McKnight v. State, 738 So.2d 312, 316-17 (¶¶ 12-15) (Miss.Ct.App. 1999). Notwithstanding the inadequacies of the record before us, we address this claim due to the obvious constitutional implications. See Scarbough v. State, 893 So.2d 265, 271(¶ 16) (Miss.Ct.App.2004).
¶ 37. Our supreme court has summarized the standard of review for closing arguments:
Attorneys have wide latitude in closing arguments. Notwithstanding the wide latitude afforded in closing arguments "[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice . . . so as to result in a decision influenced by the prejudice so created."
Foley v. State, 914 So.2d 677, 687(¶ 18) (Miss.2005) (quoting Eckman v. Moore, 876 So.2d 975, 994(¶ 73) (Miss.2004)). Furthermore, we note that "any alleged improper comment must be viewed in context, taking the circumstances of the case into consideration." Id. The trial court is best situated to determine if such a remark results in prejudice. Id.
¶ 38. We find that the State's comments were, at worst, commentary on Sims's failure to advance a defense in the case. Our supreme court found no error in similar comments made by the State in Davis v. State, 660 So.2d 1228, 1254-55 (Miss.1995). During the closing arguments of the penalty phase of Davis' trial, the State argued, "[the defendant] is the one that showed no compassion, but would send a lawyer up here and ask you for compassion. He is the one that we have never heard one single witness say he ever felt sorry for what he did. . . ." The supreme court held that the statement was a permissible comment *992 on the defendant's failure to produce sufficient evidence of mitigating circumstances during penalty phase of his trial. Id.
¶ 39. Similarly, in the case sub judice the State was merely arguing that Sims failed to present a defense, which is distinguishable from commenting on Sims's decision not to testify. See Scarbough, 893 So.2d at 271-72 (¶¶ 16-18). This issue is without merit.
¶ 40. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, DRIVE-BY SHOOTING, AND SENTENCE OF THIRTY YEARS WITH FIVE YEARS SUSPENDED AND TWENTY-FIVE YEARS TO SERVE DAY FOR DAY, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED AND TEN YEARS TO SERVE TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I, AND REIMBURSE JONES COUNTY THE AMOUNT OF $750, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The Court takes judicial notice that due to a scrivener's error the record attributes the objection to the trial court and not defense counsel. Presuming the State did not request the mistrial, we credit the defense with having made the objection and the motion.