GRAVES, Presiding Justice,
 

 for the Court:
 

 ¶ 1. This is an appeal from the Harrison County Youth Court’s adjudication of C.K.B. (C.B.) as a delinquent for the act of burglary and from the court’s imposition of sanctions against C.B., his mother, and counsel for C.B. We reverse and render on all issues.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Susan Barnes received a telephone call on April 8, 2009, that someone had
 
 *1269
 
 broken into her home in D’Iberville. Before proceeding to her home, Barnes telephoned the man who had installed her security system and cameras to ask him to retrieve the surveillance video. Upon arrival at her home, Barnes said she found that the back door appeared to have been kicked in, but that nothing had been taken from her home. Barnes also testified that the security system indicated that nobody had entered the house and that she did not know any of the four individuals shown in the vicinity of her home on the video. The surveillance video was delivered to Capt. Keith Davis of the D’Iberville Police Department.
 

 ¶ 3. Davis testified that, after viewing the video,
 
 [1]
 
 which showed four individuals in the vicinity of Barnes’ home, authorities brought a group of young men in for questioning. While questioning those young men, Davis was informed that Barnes’ son had identified M.T. as one of the subjects on the video. Davis said he asked the group of young men being questioned whether any of them knew where to find M.T., and the group directed him to Stannevia Pritchett’s residence. Later that same day, Davis said that he sent officers to Pritchett’s residence, where Pritchett, M.T., C.B., and C.H. were arrested. Davis testified that Pritchett’s mother consented to a search of the residence, and authorities recovered various articles of clothing similar to those worn by Pritchett, M.T., and C.H. in the video. However, authorities recovered no clothing worn by C.B., and Davis could not specifically identify what C.B. was wearing.
 

 ¶ 4. On April 10, 2009, a detention hearing was held in the Harrison County Youth Court, and C.B., born January 2,1994, was ordered detained until further order of the court. The prosecutor also filed on that date a formal delinquency petition against C.B. for the count of burglary in violation of Mississippi Code Section 97-17-23. C.B. was transported to the Youth Court for a First Call hearing on May 6, 2009. C.B. did not appear before the court, but met with his attorney and entered a Petition to Deny the delinquent act of burglary. Also on May 6, 2009, the trial court entered an automatic order of continuance, finding that the matter would be continued “by agreement of all parties.”
 
 [2]
 
 On May 14, 2009, C.B. filed a Waiver of Rights and Entry of Admission and a Petition to Admit based upon an indication from the youth-court counselor that she would recommend probation if he admitted the burglary charge. Counsel for C.B. filed a Motion to Set Case for Adjudication and Disposition and Release the Minor from Detention on May 15, 2009. A hearing was held on the motion on May 21, 2009. The court set the adjudicatory hearing for June 22, 2009, and summarily denied the request for release. This order was filed on May 26, 2009.
 

 ¶ 5. On May 29, 2009, counsel for C.B. filed a notice of appeal of the May 26 order pursuant to Mississippi Code Section 43-21-651(1) and Rule 3(a) of the Mississippi Rules of Appellate Procedure. Also on May 29, 2009, counsel for C.B. filed a Motion for Release and Stay of Detention Order Pending Appeal, seeking to appeal
 
 *1270
 
 with supersedeas. After a hearing on the motion for release and stay on June 4, 2009, the youth court entered an Order Denying Appeal with Supersedeas and a separate order imposing sanctions against C.B., his mother, and his counsel. On June 5, 2009, counsel for C.B. filed an amended notice of appeal. The youth court also entered an order denying appeal with supersedeas on June 5.
 

 ¶ 6. The original notice of appeal and several subsequent filings were docketed by this Court in cause number 2009-TS-00894. On June 5, 2009, the prosecutor filed a Motion to Docket and Dismiss Appeal with this Court. On June 8, 2009, counsel for C.B. filed an Emergency Motion for Stay and Injunction Pending Appeal or in the Alternative, Emergency Petition for Writ of Mandamus & Prohibition. This emergency motion sought an adjudicatory hearing to be held within two days or, alternatively, C.B.’s release pending the June 22 hearing, and was filed pursuant to Rules 8 and 21 of the Mississippi Rules of Appellate Procedure. On June 8, 2009, this Court ordered Harrison County Youth Court Judge Michael Ward to respond to the motion. Judge Ward responded by setting an adjudicatory hearing on the morning of June 9, 2009, and later submitting a written response. As discussed more fully herein, during this adjudicatory hearing, Judge Ward informed C.B. that he most likely would be sent to training school. Thereafter, C.B. withdrew the portion of his emergency motion seeking an adjudicatory hearing within two days and replied to Judge Ward’s written response. On June 11, 2009, a panel of this Court entered an order granting the Motion to Docket and Dismiss Appeal without prejudice. Also on June 11, 2009, the prosecutor filed a response to C.B.’s emergency motion. A panel of this Court then entered an order on June 11, 2009, dismissing as moot the portion of the emergency motion seeking an adjudicatory hearing that C.B. had withdrawn and denying the portion of the motion seeking-a stay.
 

 ¶ 7. On June 15, 2009, counsel for C.B. filed with this Court a Second Amended Notice of Appeal of the order for sanctions. That filing and all filings thereafter were docketed in cause number 2009-TS-01004. On June 22, 2009, the youth court adjudicated C.B. a delinquent child. A disposition hearing was held on June 23, 2009, and C.B. was committed to the custody of the Department of Human Services for placement at Oakley Training School. After acknowledging caselaw of this Court prohibiting him from setting a term of placement, Judge Ward included the following language in the order: “The Court further finds that it is the considered opinion of the Court that the Superintendent of Oakley Training School should not consider this child for parole until he has reached the age of eighteen years.” (Emphasis original.)
 

 ¶ 8. On September 4, 2009, counsel for C.B. filed an Emergency Petition for Stay Pending Appeal, seeking C.B.’s immediate release pending appeal. By order on September 4, 2009, a panel of this Court dismissed the petition without prejudice for failure to comply with Rule 8 of the Mississippi Rules of Appellate Procedure. On September 17, 2009, counsel for C.B. filed a Second Emergency Petition for Stay Pending Appeal and attached the trial court order denying the requested relief on August 18, 2009, and a Statement of Rule 8 Unavailability. This Court entered an order that same date, giving the Harrison County Youth Court until September 28, 2009, to respond to the petition. The prosecutor filed a response on September 28, 2009. Counsel for C.B. filed a reply to this response on September 30, 2009. A panel of this Court entered an Order on October 7, 2009, denying the Second
 
 *1271
 
 Emergency Petition for Stay Pending Appeal and finding that an expedited briefing schedule should be set. On October 15, 2009, counsel for C.B. filed a Motion to Sever the appeal of the sanctions from the appeal of the adjudication because each issue was being handled by separate counsel and in an effort to expedite consideration of the adjudication and disposition to prevent C.B. from needlessly being held at Oakley. The prosecutor filed on October 20, 2009, an Objection and Response to Motion to Sever. On November 9, 2009, this Court entered an order denying the Motion to Sever.
 

 ¶ 9. Counsel for C.B. later filed a Motion to Exclude Appellee’s Record Excerpts. The prosecutor filed a response and counsel for C.B. then filed a Motion for Leave to Withdraw Motion to Exclude Appellee’s Record Excerpts. However, on November 23, 2009, this Court entered an order passing the original Motion to Exclude Appel-lee’s Record Excerpts for consideration with the merits of this appeal.
 

 ANALYSIS
 

 I. THE YOUTH COURT ERRED IN DECLARING THAT C.B.’S MOTION FOR RELEASE AND STAY OF DETENTION PENDING APPEAL WAS DUPLICATIVE OF A PRIOR MOTION AND IN IMPOSING SANCTIONS AS PUNISHMENT FOR FILING THE MOTION.
 

 ¶ 10. At the June 4, 2009, hearing on the Motion for Release and Stay of Detention Order Pending Appeal, the following transpired:
 

 THE COURT: Okay. Let me just say this. I’m not at all certain that this Court has any jurisdiction whatsoever over this case pursuant to the rules of appellate procedure of the state of Mississippi, but that is not a decision I am at this time prepared to make.
 

 However, back some time ago I advised counsel not to file duplicative pleadings with this court. This is a duplicative pleading. This is an effort seeking another detention hearing without setting forth any new grounds to release.
 

 In addition thereto, it’s an attempt to backdoor a release of a child by the appeal of the case which every lawyer knows you can’t appeal except from a final judgment unless you get an appeal, an interlocutory appeal and an interlocutory appeal only goes in cases wherein the decision of the appellate court would settle the issues in the lawsuit.
 

 Now, this is what I — and I advised counsel if y’all do this, I’m going to sanction you. So, here’s where we are going to go:
 

 Ms. Carroll, you signed-off on this, you get sanctioned twenty-five dollars.
 

 Ms. Bedi, you signed-off on this, you get sanctioned twenty-five dollars.
 

 Since the style of the appeal is
 
 Mississippi Youth Justice Project, et al.,
 
 The Mississippi Youth Justice Project is sanctioned one hundred dollars.
 

 Ms. Harper, because you’ve signed-off on this and because these are retained counsel, you are sanctioned twenty-five dollars.
 

 Mr. B., you signed-off on this and because this is retained counsel, you are sanctioned twenty-five dollars.
 

 ¶ 11. The trial court further added:
 

 Let me just make sure that everyone understands this. If these duplicative motions continue to occur, as I have previously stated, the amount of the sanctions will increase.
 

 The next time the Southern Poverty Law Center will be sanctioned one thousand dollars, and then it will go up and so you can call over there to Montgom
 
 *1272
 
 ery and let them know that if you keep filing these duplicative motions and tying up this court, and tying up the clerk, and tying up transport, that they are going to be paying a lot of money. So, let Morris know that.
 

 ¶ 12. Thereafter, the youth court entered an order which stated:
 

 This cause came on to be heard on the Motion for Release and Stay of Detention Order Pending Appeal filed herein by the Respondent, and there appearing in Court this day the Respondent, his counsel, Vanessa Carroll and Sheila Bedi, his mother, Melody Harper, and the Court, finding that said motion to be duplicative of a prior motion without setting forth any new grounds for release, and the Court further finding that said motion is vexatious and oppressive and filed for the purpose of wasting this Court’s time, as well as the time of the clerk, transport officers, youth service counselors, and intake counselors, and the Court further finding that counsel, having filed like and similar pleadings in other cases on several occasions, and having been warned regarding the filing of duplicative motions, it is, therefore
 

 ORDERED, ADJUDGED AND DECREED that Sheila Bedi and Vanessa Carroll are hereby sanctioned Twenty-Five Dollars ($25.00) each. It is further
 

 ORDERED, ADJUDGED AND DECREED that the Mississippi Youth Justice Project, for whom counsel works, be and is hereby sanctioned One Hundred Dollars ($100.00) for the acts of its employees. It is further
 

 ORDERED, ADJUDGED AND DECREED that because counsel have been retained in this case, the child [C.B.], and his mother, Melody Harper be and are hereby sanctioned Twenty-Five Dollars ($25.00) each. It is further
 

 ORDERED, ADJUDGED AND DECREED that said funds shall be paid into the general fund of Harrison County-
 

 ¶ 13. Although the youth court failed to cite any authority and failed to include a specific statement as to the basis for the sanctions, C.B. asserts that the youth-court order for sanctions is in the nature of a finding of criminal contempt. C.B. further asserts that the Rules of Appellate Procedure required that the request for relief be presented to the youth court before seeking a stay in this Court, and asserts that the motion was not duplica-tive. Also, C.B. asserts that, even if there was a basis for imposing sanctions on counsel, there was no basis to impose sanctions on C.B. and his mother.
 

 ¶ 14. Harrison County asserts that this is not a matter of criminal contempt, but rather sanctions pursuant to Rule 11(b) of the Mississippi Rules of Civil Procedure. Harrison County asserts that C.B. had no right to appeal with supersedeas and, thus, no right to seek a stay from this Court, making the Rules of Appellate Procedure inapplicable. Therefore, Harrison County asserts that there was no reason for C.B. to file the duplicative motion for release and stay in the youth court. Further, Harrison County asserts that, since C.B. and his mother were present for the detention hearing, and since both signed the duplicative motions, it was not an abuse of discretion for the trial court to sanction them. Harrison County reiterates, “[sjince both the mother and child signed onto the motions, they are subject to sanctions for those pleadings. Had they not affixed their signature to the pleadings, they would not have been sanctioned under Miss. R. Civ. P. 11.” We disagree with Harrison County. Neither C.B. nor his mother “affixed their signature to the pleadings.” There were declarations of C.B. and his mother attached as exhibits to the second motion, but neither signed ei
 
 *1273
 
 ther pleading. Further, notwithstanding the fact that the trial court clearly was not imposing sanctions pursuant to Rule 11, Harrison County fails to provide a single citation of authority for imposing sanctions on a child.
 

 ¶ 15. Rule 11 states, in relevant part:
 

 If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys’ fees.
 

 Miss. R. Civ. P. 11(b). The youth court made no specific finding that any motion was “frivolous or is filed for the purpose of harassment or delay.” Even if the youth court’s characterization of the motions as duplicative was somehow found to satisfy this language of the rule, the youth court failed to make any finding of reasonable expenses. Rule 11 is augmented by the Litigation Accountability Act, which also sets out specific factors to be considered in awarding costs or fees.
 
 See
 
 Miss.Code Ann. §§ 11-55-5, 11-55-7 (Rev.2002). As evidenced by the quoted portion of the transcript above, the record indicates that Judge Ward merely meted out arbitrary fines with the threat of more severe fines for anything he deemed a future violation.
 

 ¶ 16. The transcript and the order, as quoted above, indicate that Judge Ward was imposing sanctions for what he believed to be violations of his prior order regarding duplicative filings. This Court set out the analysis for determining the type of contempt in
 
 Cooper Tire & Rubber Co. v. McGill,
 
 890 So.2d 859, 868-68 (Miss.2004). “Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order.”
 
 Id.
 
 at 868 (citing
 
 Common Cause of Miss. v. Smith,
 
 548 So.2d 412, 415-16 (Miss.1989)). This Court also has said:
 

 A judge issues a citation of criminal contempt to vindicate the dignity and authority of the court. This is proper only when the contemnor has wilfully, deliberately and contumaciously ignored the court, or the court’s directive.... ‘This Court is not bound by the manifest error rule when the appeal involves a conviction of criminal contempt. Instead, this Court proceeds ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt.’
 

 In re Smith,
 
 926 So.2d 878, 888 (Miss.2006) (citations omitted). Further:
 

 Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed.
 

 Id.
 

 ¶ 17. We find that the imposition of sanctions was in the nature of a finding of direct criminal contempt and must be reviewed ab initio.
 

 “[T]his Court proceeds
 
 ab initio
 
 to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt.” ... The burden of proof to establish that contempt has been committed is on the party that is asserting that it has.... In a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt.
 

 Brame v. State,
 
 755 So.2d 1090, 1093 (Miss.2000) (citations omitted).
 

 
 *1274
 
 ¶ 18. Judge Ward indicates that he warned C.B.’s counsel in other, unrelated cases about filing duplicative motions. In C.B.’s case, counsel filed two motions. First, counsel filed a Motion to Set Case for Adjudication and Disposition and Release the Minor from Detention on May 15, 2009. This motion asserted that C.B. had been detained thirty-seven days in violation of Mississippi Code Section 43-21-551(2) and sought his release pending final adjudication. Further, this motion asked the Court to immediately set C.B.’s case for adjudication, as he had filed a petition to admit. After a hearing, the youth court entered an order on May 26, 2009, setting the adjudicatory hearing for June 22, 2009, and summarily denying the request for release. On May 29, 2009, counsel for C.B. filed a notice of appeal of the May 26 order pursuant to Mississippi Code Section 43-21-651(1) and Rule 3(a) of the Mississippi Rules of Appellate Procedure. Also on May 29, 2009, counsel for C.B. filed a Motion for Release and Stay of Detention Order Pending Appeal, seeking to appeal with supersedeas. After a hearing on the motion for release and stay on June 4, 2009, the youth court entered an Order Denying Appeal with Supersedeas and a separate order imposing sanctions against C.B., his mother and his counsel.
 

 ¶ 19. Mississippi Code Section 43-21-551 states, in relevant part:
 

 (2) If the child is in detention, the hearing shall be held as soon as possible but not later than twenty-one (21) days after the child is first detained by the youth court unless the hearing be postponed:
 

 (a) upon motion of the child;
 

 (b) where process cannot be completed; or
 

 (c) upon a judicial finding that a material witness is not presently available. If the adjudicatory hearing is not held or postponed for the aforesaid reasons, the child may be released from detention.
 

 Miss.Code Ann. § 43-21-551(2) (Rev.2009).
 

 ¶ 20. C.B.’s first motion sought to enforce the statutorily-imposed requirement that his adjudicatory hearing be scheduled within twenty-one days. Specifically, C.B. asked the youth court to immediately set a hearing and to release him pending final adjudication.
 

 ¶ 21. In the second motion, C.B. indicated his intent to appeal with supersedeas pursuant to Mississippi Code Section 43-21-651(2) and Rule 8(b)(1) of the Mississippi Rules of Appellate Procedure. Further, C.B. asked the court to stay the May 26, 2009, detention order pending his final hearing scheduled for June 22, 2009. Attached as exhibits to this motion were the declarations of counsel, C.B., and C.B.’s mother, Melody Harper, indicating that C.B. had never asked for nor agreed to any continuance. On June 5, 2009, the prosecutor filed a Motion to Docket and Dismiss Appeal with this Court. On June 8, 2009, counsel for C.B. filed an Emergency Motion for Stay and Injunction Pending Appeal or in the Alternative, Emergency Petition for Writ of Mandamus & Prohibition. This emergency motion sought an adjudicatory hearing to be held within two days or C.B.’s release pending the June 22 hearing and was filed pursuant to Rules 8 and 21 of the Mississippi Rules of Appellate Procedure. On June 8, 2009, this Court ordered Harrison County Youth Court Judge Michael Ward to respond to the motion. Judge Ward responded by setting an adjudicatory hearing on the morning of June 9, 2009, and later submitting a written response.
 

 ¶ 22. Mississippi Code Section 43-21-651 states that the “court to which appeals may be taken from final orders or decrees of the youth court shall be the Supreme Court of Mississippi.” Miss.Code Ann.
 
 *1275
 
 § 43-21-651(1) (Rev.2009). Further, Section 43-21-651(2) states, in relevant part:
 

 The pendency of an appeal shall not suspend the order or decree of the youth court regarding a child, nor shall it discharge the child from the custody of that court or of the person, institution or agency to whose care such child shall have been committed, unless the youth court or supreme court shall so order.
 
 If appellant desires to appeal with su-persedeas, the matter first shall be presented to the youth court.
 
 If refused, the youth court shall forthwith issue a written order stating the reasons for the denial, which order shall be subject to review by the supreme court....
 

 Miss.Code Ann. § 43-21-651(2) (Rev.2009) (emphasis added).
 

 ¶ 23. Rule 8(b)(1) of the Rules of Appellate Procedure states that, “Application for a stay of the judgment or the order of a trial court pending appeal or for approval or disapproval of a contested supersede-as bond or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal
 
 must ordinarily be made in the first instance to the trial court.”
 
 Miss. R.App. P. 8(b)(1) (emphasis added).
 

 ¶ 24. Harrison County asserts that C.B. had no right to appeal because no final judgment had been entered. However, Harrison County offers no authority which establishes that this Court lacks authority to review any decision of a youth court until a final adjudication and disposition. Moreover, despite the erroneous assertion that the Rules of Appellate Procedure do not apply because there had not been a final disposition, Harrison County acknowledges the existence of a rule pertaining to interlocutory appeals.
 

 ¶ 25. Further, in the requested response to this Court on the emergency motion, Judge Ward referred to “ ‘emergencies’ claimed by the Petitioner” and said “the cause of the original delay, in no small part, rests with the child and his counsel as, originally a denial to the Delinquent Petition was entered by the child and his counsel.” The record indicates that C.B. denied the burglary, but then filed a petition to admit based upon an indication from the youth court counselor that she would recommend probation if he admitted the burglary charge. However, during C.B.’s hearing, Judge Ward informed C.B. that he would not get probation and, thus, C.B. reasserted his denial. Judge Ward characterizes C.B.’s decisions as “playing games.” However, such a statement is not supported by the record. The following exchange occurred between Judge Ward and C.B. during the hearing on June 9, 2009:
 

 THE COURT: Do you understand that if you admit to these charges that you give up your rights in this case?
 

 C.K.B.: Yes, sir.
 

 THE COURT: Okay. Now, it has been brought to my attention by Ms. Carroll [counsel for C.B.] that you want to admit to this because Ms. Tate [youth court counselor] has told you that she’s going to recommend to the court that you receive probation.
 

 C.K.B.: Yes, sir.
 

 THE COURT: That’s what she says. C.K.B.: Probation ...
 

 THE COURT: I’m sorry?
 

 C.K.B.: I had a recommendation of AOP, probation ...
 

 THE COURT: Listen to me. Ms. Carroll tells me you’re going to admit to the burglary because Ms. Tate told you, for inexplicable reasons to me that she was going to recommend probation to you. Is that right?
 

 C.K.B.: Yes, sir.
 

 THE COURT: Okay. Do you understand that I am going to send you to the
 
 *1276
 
 training school more than likely? Do you understand that?
 

 C.K.B.: Yes, sir.
 

 THE COURT: All right [sic]. If you don’t want to admit to this charge, then I want you to tell me that you deny the charge.
 

 C.K.B.: I deny that charge.
 

 THE COURT: I’m sorry?
 

 C.K.B.: I deny that charge.
 

 THE COURT: Okay. Very good then. The case is set for trial for the 22nd day of June. Do we have anything else before I go write another brief to the Supreme Court?
 

 MS. CARROLL: No, your honor.
 

 MS. BEDI: No, your honor.
 

 THE COURT: That’s it. Get him out of here.
 

 ¶ 26. The record in this matter does not indicate any basis for a finding of direct criminal contempt. The youth court sanctioned a
 
 child,
 
 his mother and his counsel for an alleged violation of the court’s directive in
 
 other, unrelated cases.
 
 The alleged violation in this case was the filing of
 
 two
 
 motions pursuant to statutory authority seeking to prevent a child from being detained for some seventy-six days pending his final adjudication. C.B. was required under both the applicable statute and rule to first seek relief in the youth court. This Court found C.B.’s motion meritorious enough to call for a response from Judge Ward. Reasonable diligence in the zealous representation of a juvenile is not a viable basis for either contempt or Rule 11 sanctions.
 
 [3]
 
 Therefore, we find that the youth court erred in finding that C.B. had filed duplicative motions and in imposing sanctions against C.B., his mother, and his counsel.
 

 II. THE YOUTH COURT JUDGE ERRED BY FAILING TO DIRECT A VERDICT IN FAVOR OF C.K.B.
 

 ¶ 27. C.B. asserts that the youth court erred in failing to direct a verdict in his favor. This is essentially an argument regarding the sufficiency of the evidence to prove the elements of burglary.
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993).
 

 ¶ 28. With regard to youth-court delinquency proceedings, this Court has said:
 

 An adjudication of delinquency is not a criminal conviction; however, the standard of proof to support a determination that a youth is a delinquent child is the same as for the criminal conviction of an adult, i.e., proof of all of the essential elements of the offense beyond a reasonable doubt.
 

 In the Interest of
 
 J.P.C., 783 So.2d 778, 781 (Miss.2000).
 

 ¶ 29. C.B. was adjudicated a delinquent for burglary of a dwelling under Mississippi Code Section 97-17-23, which states, in relevant part:
 

 Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections ....
 

 Miss.Code Ann. § 97-17-23(1) (Supp.2009).
 

 ¶ 30. The evidence in this case consisted of a low-resolution, home-surveillance video approximately four or five minutes in length and optimally viewed at approximately the size of a three-by-five-inch photograph. People appear on this video for
 
 *1277
 
 only a few minutes. The video shows four individuals, three black males and one white male, walking down a street at such a distance that they cannot be identified by facial features. Other closer-proximity scenes show what appears to be two of those same individuals, one black male and one white male, jump a fence into a back yard and approach a back door of a home. After apparently kicking the back door, the two individuals jump the fence and run back toward the street where they encounter a third individual.
 

 ¶ 81. The only evidence of C.B.’s presence in the vicinity of the home was Davis’ testimony that C.B. was one of the individuals merely walking down the street. However, on cross-examination, Davis admitted that he could not identify the faces of any of the four individuals walking down the street in the first portion of the video. When the video was played at the hearing during Davis’ testimony, the following exchange occurred:
 

 THE COURT: I’m looking at little birdies fly across the pavement. They’re cute little birdies. Precious little birdies. Little doves. Ah, here we go.
 

 A. There’s a defendant coming into view now. This is M.T., Your Honor.
 

 THE COURT: How do you know that?
 

 A. And Mr. B.
 

 MS. CARROLL: Objection.
 

 THE COURT: How do you know that? How do you know that, Captain?
 

 A. My familiarity with them and the clothes that they were wearing that day.
 

 THE COURT: Oh. Well, I guess he can give his opinion. I overrule the objection.
 

 Now we’re going to a different view?
 

 A. Yes, sir.
 

 ¶ 32. However, as discussed below, Davis was not certain of what C.B. was wearing and confiscated no clothing from C.B. Further, on cross-examination, Davis testified:
 

 Q. Can you stop it right there? I guess stop it when you can see all four faces.
 

 A. I don’t see all four faces.
 

 Q. Right. So, at this point, you can’t identify who those four people are. Those are just four people walking by.
 

 A. I can.
 

 Q. You can identify them?
 

 A. Yes, sir.
 

 Q. Stop it, sir, and show me where you see the four faces that you can identify.
 

 A. (No response by witness)
 

 MR. WILSON [PROSECUTOR]: Judge, what he ...
 

 Q. What are you looking at him for, sir? I’m the one examining you ...
 

 THE COURT: He has already told you he can’t get all four faces. So now what’s your next question? He’s already said that.
 

 MR. SMITH: (continuing cross-examination)
 

 Q. All right. Go ahead, sir. Continue. You and I both agree that there were four bodies?
 

 A. Yes.
 

 Q. Thank you, sir.
 

 ¶ 33. Davis later testified that, despite being unable to identify their faces, he was able to identify the four individuals because he was familiar with them from previous dealings.
 

 ¶ 34. Davis identified Pritchett, wearing shorts and a light blue shirt, and C.H., wearing a white-hooded sweatshirt (hood-ie), as the two individuals who jumped the fence and approached the door. Davis further identified Pritchett as the adult and as the more aggressive one in physically opening the door.
 

 ¶ 35. As to C.B., Davis was merely asked what the person he believed to be C.B. on the video appeared to be wearing.
 
 *1278
 
 Davis neither identified the clothing C.B. was wearing that day when arrested nor did he confiscate any clothing from C.B.
 

 Q. Who was wearing similar clothing in the tape that you observed?
 

 A. Mr. H. and Mr. T.
 

 Q. Okay. What was Mr. H. wearing in the tape?
 

 A. He was wearing a white hoodie similar to one I removed from the house.
 

 Q. And what was Mr. T. wearing?
 

 A. Mr. T. was wearing the jeans similar to the ones that I removed from the house.
 

 Q. Is that the long jeans or the shorts?
 

 A. Long jeans.
 

 Q. Thank you. Did you see what Mr.
 

 B. was wearing on the tape or appeared to be? Could you tell?
 

 A. Yes. It appeared that he was wearing some shorts.
 

 Q. Okay. But you don’t know if those are similar or the same or can ...
 

 A. It’s not these shorts. I did not take Mr. B.’s clothes.
 

 ¶ 36. During cross-examination about his report that the four individuals left the scene together, Davis acknowledged that only three individuals were still present.
 

 Q. ... I’ll go on to another question, Officer. It says here at the very bottom, all four subjects then walked west from the residence on — if I pronounce that — Ginger Avenue, yet the video clearly shows that only three of them left. Is that correct? When you looked at that video. What happened to the fourth guy?
 

 A. (No response).
 

 Q. The video that you just saw showed the two jumping over the fence meeting with one man. You’ve charged four people. What happened to the fourth guy? A. The video also shows, Counselor, that the other guy walked the other way.
 

 ¶37. At the close of the adjudication hearing, the youth court found that the “case is insufficient against Mr. H [identified by Davis as jumping the fence and assisting Pritchett with kicking the door open]. He is ordered released to the custody of his mother. The other two defendants
 
 [4]
 
 are found guilty beyond a reasonable doubt.”
 
 [5]
 

 ¶ 38. C.B. asserts that the prosecution failed to adduce admissible evidence relevant to each essential element pursuant to
 
 Lee v. State,
 
 756 So.2d 744, 748 (Miss.1999).
 

 ¶ 39. Harrison County asserts that:
 

 The first element of the crime was proven by three key pieces of evidence: The video which shows the back door being kicked in, the confession of C.K.B., and the corroborating testimony of Captain Davis and Susan Barnes.... Accepting as true the evidence that supports guilt, namely, the confession, and giving the State the benefit of any reasonable inferences; namely, that the minor in the video is in fact C.K.B., the state provided sufficient evidence such that a reasonable juror could find the defendant was guilty.
 

 ¶ 40. As discussed in issue three, C.B.’s uncorroborated “confession,” which is contrary to the video, is insufficient to support adjudication. Davis admitted he could not identify C.B. as one of the individuals walking down the street. Davis said he
 
 *1279
 
 identified C.B. by clothing, but had only a general idea of what the person he identified as C.B. appeared to be wearing on the video. Further, Davis did not specifically identify or confiscate any clothing from C.B. Most importantly, Davis admitted that C.B. was not one of the individuals who had jumped the fence and kicked in the door. Further, Barnes did not identify C.B. as an individual involved in any burglary.
 

 ¶ 41. There is no evidence in the record of C.B. breaking and entering the dwelling house or inner door of a dwelling house. There is also no evidence in the record that C.B. had any intent to commit any crime therein. Therefore, neither element of burglary was proven beyond a reasonable doubt, and there was insufficient evidence to adjudicate C.B. a delinquent child. For these reasons, we find that the trial court erred in not granting the directed verdict.
 

 III. THE YOUTH COURT PROSECUTOR SHOULD NOT HAVE BEEN PERMITTED TO INTRODUCE A PREVIOUSLY UNDISCLOSED CONFESSION.
 

 ¶ 42. Davis acknowledged that he had prepared a written report which stated that only C.H. had admitted culpability. However, over objection of counsel at trial, Davis testified that C.B. and M.T., but not C.H., had admitted culpability.
 

 ¶43. After the youth court overruled counsel’s objection to the admission of any statement not provided during discovery, Davis offered the following testimony:
 

 Q. Did Mr. B. make a statement to you?
 

 A. Yes, sir. He did.
 

 Q. Okay. Did you advise Mr. B. of his rights per
 
 Miranda
 
 ?
 
 [6]
 

 A. Yes, sir. I did.
 

 Q. Did he execute a written waiver?
 

 A. No. He did not.
 

 Q. Did you speak to Mr. B.’s parent or guardian prior to your interview and invite her to be present during the interview?
 

 A. Yes, sir. I did.
 

 Q. And what did she say?
 

 MS. CARROLL: Objection. Hearsay.
 

 THE COURT: Overruled.
 

 A. She said that she was not coming to the police department for any interviews with her son.
 

 MR. WILSON: (continuing direct examination)
 

 Q. Okay. Did she make any specific statements to you about recovering anything?
 

 A. She said if I would to retain her cell phone, that she didn’t want him to have her cell phone any more.
 

 Q. Okay. What did Mr. B. tell you?
 

 A. Mr. B. said that, “I don’t want to talk about it. I’m just ready to go. I did it by myself. There wasn’t nobody else with me.”
 

 Q. Okay. Did Mr. B. give a recorded statement or would he talk to a recorder?
 

 A. He made that statement before I had the opportunity to get the recorder ready or anything like that. He just said, “I don’t want to talk. I did it by myself.”
 

 Q. Okay. And that was his statement? A. Yes, sir.
 

 ¶ 44. Then on cross-examination by counsel for C.B., Davis testified as follows:
 

 BY MS. CARROLL:
 

 
 *1280
 
 Q. You had an opportunity to review the video footage before you questioned any of the individuals that you arrested?
 

 A. That’s correct.
 

 Q. So, you knew that more than one person was involved?
 

 A. Yes.
 

 Q. Okay. And you also knew that Mr. B was not one of the two individuals that you saw at the back door?
 

 A. Yes.
 

 Q. Okay. And then when you arrested the individuals at Mr. Pritchett’s house and you brought them to the police station, did you first contact all of their parents?
 

 A. With the exception of the adult. That’s correct.
 

 Q. Okay. So, you contacted the parents and let them know their children were in custody. And you advised them that they could consent to whether or not you could question their children.
 

 A. Yes.
 

 Q. And you advised the individuals of their
 
 Miranda
 
 rights.
 

 A. Yes.
 

 Q. And when you do that, you get them to sign a form?
 

 A. Yes, ma’am.
 

 Q. Okay. And that form shows that you’ve informed the individual of their rights and what they’re waiving and that by signing this form, they’re giving up those rights. Correct?
 

 A. Yes.
 

 Q. Okay. And you completed this form with M.T., C.H. and Stannevia Pritchett and Ishmael Ratcliff?
 

 A. Yes.
 

 Q. Okay. But you did not complete one with C.B.?
 

 A. That’s correct.
 

 Q. Okay. And you also noted on these forms when you contacted the parent that the parent gave consent to their child being questioned out of their presence. Correct?
 

 A. Yes.
 

 Q. Okay. And you said that you did speak with Melody Harper, C.B.’s mother?
 

 A. I don’t remember her name. I did speak with his mother.
 

 Q. But you spoke with his mom. Okay. And did you not make any note anywhere that she had consented to you questioning her child out of her presence?
 

 A. No, I did not.
 

 Q. Okay. But you had the opportunity to ask Mr. B to complete a waiver of rights?
 

 A. Yes.
 

 Q. All right [sic]. And you also had the opportunity to make a note on that form that you could go ahead and question him without his mother’s consent. A. No, I did not. He did not. He said he wasn’t going to sign anything. He wasn’t going to talk to me.
 

 ¶ 45. With regard to his report, Davis testified on cross-examination, as follows:
 

 Q. Okay. And you’re also sure to include in that report all the important details, including admissions made by the suspects?
 

 A. Yes.
 

 Q. Okay. And in this case you did make a final correct copy of your investigative report?
 

 A. I made a copy and submitted it to the court as the investigative report for this case.
 

 Q. Okay. And that was your final ... A. No.
 

 Q. ... report. You did not make a final report?
 

 A. That’s the report for this case. There is another report that has to be
 
 *1281
 
 generated for the completed case to be sent to the district attorney’s office.
 

 Q. Okay. But for this case, this is the final, the report that you gave to Mr. Wilson last week is the final report?
 

 A. That’s correct.
 

 Q. Correct. Okay. Thank you. And when you prepared this report, you did not state in this that Mr. B made any type of admission to you.
 

 A. No.
 

 Q. Okay. And you also did not include in this report that Mr. T. made a statement to you?
 

 A. No.
 

 Q. Okay. But you did testify a minute ago that all of the suspects did make statements and admissions to you, but Mr. H. did not make an admission?
 

 A. Yes.
 

 Q. Okay. But do you recall including in your report that actually Mr. H. did tell you that he admitted culpability?
 

 A. That is correct, Counselor. I did put in the report that he admitted culpability.
 

 Q. So, for the record, you did note that C.H. did make a statement to you admitting [sic]?
 

 A. Yes.
 

 ¶46. Despite this report, Davis also testified, “[e]aeh one of these defendants said that they did it by themselves and no one else was there present with them, with the exception of Mr. H. Mr. H. would not make a statement.”
 

 ¶47. C.B. asserts that the statement should not have been admissible pursuant to
 
 Brady v. Maryland,
 
 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it could have been used to impeach Davis.
 
 See United States v. Bagley,
 
 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). C.B. acknowledges that there was no request for a continuance, which is required pursuant to
 
 Box v. State,
 
 437 So.2d 19 (Miss.1983), but asserts that the statement still should not have been admitted under
 
 Brady.
 
 Further, C.B. notes that the statement was not corroborated as required by Mississippi Code Section 43-21-559.
 

 ¶ 48. Harrison County asserts that a synopsis of the report indicated that the individuals had admitted culpability to the crime and that it was sufficient to put the defense on notice. Harrison County, citing
 
 Sims v. State,
 
 928 So.2d 984, 988 (Miss.Ct.App.2006), further asserts that C.B. waived his right to contest any discovery violation by failing to request a continuance. Harrison County also asserts that the failure to raise a continuance somehow prohibits the application of Mississippi Code Section 43-21-559. However, Harrison County provides no authority to support such a proposition.
 

 ¶49. As indicated above, Davis testified that he obtained a written waiver of rights from four other individuals. Those waivers included notations regarding the parental consent to question those individuals. Davis testified that he failed to obtain a written waiver of rights from C.B. Davis also testified that he spoke with C.B.’s mother, although he neither remembered her name nor made any written note that she consented to his questioning of C.B. Further, Davis testified that C.B. gave a statement admitting culpability that Davis knew was contradictory to the only evidence, i.e., the video. We find it unnecessary to determine the admissibility of the statement because, even if the statement were admissible, Mississippi Code Section 43-21-559 clearly provides that it shall be insufficient to support an adjudication. Section 43-21-559 provides, in relevant part:
 

 (1) In arriving at its adjudicatory decision, the youth court shall consider only evidence which has been formally admitted at the adjudicatory hearing.
 
 *1282
 
 All testimony shall be under oath and may be in narrative form. In proceedings to determine whether a child is a delinquent child or a child in need of supervision, the youth court shall admit any evidence that would be admissible in a criminal proceeding. In proceedings to determine whether a child is a neglected child or an abused child, the youth court shall admit any evidence that would be admissible in a civil proceeding.
 

 (2) An out-of-court admission by the child, even if otherwise admissible, shall be insufficient to support an adjudication that the child is a delinquent child unless the admission is corroborated in whole or in part by other competent evidence.
 

 Miss.Code Ann. § 48-21-559 (Rev.2009).
 

 ¶ 50. Pursuant to subsection (2), any admission by C.B. must be corroborated in whole or in part by other competent evidence. Davis testified that C.B. said, “I don’t want to talk about it. I’m just ready to go. I did it by myself. There wasn’t nobody else with me.” Harrison County asserts that this testimony is corroborated by Davis and Barnes. However, the record does not support such an assertion.
 

 ¶ 51. When this issue was raised during the hearing, Judge Ward stated: “While it is certainly true, Ms. Carroll, that a statement is insufficient, the statement is sufficient when the crime is proven. If the crime can’t be proven, then the statement is insufficient. That’s been the law since Hector was a pup or Blackstone was around.” However, this circular interpretation clearly contradicts the language of the statute.
 

 ¶ 52. Section 43-21-559 requires that there must be corroboration for the statement to be sufficient to support an adjudication. That corroboration is missing here. Neither Davis nor Barnes witnessed any burglary, and neither testified that C.B. had committed any burglary. Further, as discussed more fully herein, the only other evidence presented, i.e., the video, directly contradicts the “admission” by C.B. Surveillance video showing that two other individuals kicked open a door can hardly be construed as corroborative of an alleged admission by a third individual that he did it by himself. Further, testimony of witnesses who merely had watched the surveillance video likewise does not corroborate such an “admission.” Therefore, we find that the statement is insufficient to support an adjudication of delinquency.
 

 CONCLUSION
 

 ¶ 53. For the reasons stated herein, we reverse and render the order of the Harrison County Youth Court adjudicating C.B. as delinquent and committing him to custody for placement at Oakley Training School.
 

 ¶ 54. Further, with regard to the Motion to Exclude Appellee’s Record Excerpts passed for consideration with the merits of the appeal, the Motion for Leave to Withdraw Motion to Exclude Appellee’s Record Excerpts is hereby granted.
 

 ¶ 55. REVERSED AND RENDERED.
 

 WALLER, C.J., CARLSON, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, J„ CONCURS IN RESULT ONLY. RANDOLPH, J., NOT PARTICIPATING.
 

 [1]
 

 . As will be discussed in further detail herein, one scene on the video shows four individuals, consisting of three black males and one white male, walking down a street. Other scenes later show two of these individuals, one black and one white male, jump a fence into a back yard and approach the back door of the house.
 

 [2]
 

 . However, neither C.B., nor his counsel, nor the prosecutor appeared or asked for a continuance. The youth court later acknowledged this discrepancy on the record and then amended the continuance order to reflect that it was automatically generated because the court did not reach the case on the docket that day.
 

 [3]
 

 .
 
 See
 
 Miss. R. of Prof’l Conduct 1.3, Preamble.
 

 [4]
 

 . The record indicates that Pritchett was tried separately as an adult.
 

 [5]
 

 . Mississippi Code Section 43-21-561(4) states that: "No decree or order of adjudication concerning any child shall recite that a child has been found guilty....” However, the written order does not include the language used by the court in the transcript. Miss.Code Ann. § 43-21-561(4) (Rev.2009).
 

 [6]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).